## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JERRY SIMMONS** | **CIVIL ACTION** |
| **VERSUS** | **NO.  17-12120** |
| **DARRYL VANNOY, WARDEN** | **SECTION "I"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Jerry Simmons, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]   On October 13, 2010, Simmons was charged by bill of

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 4.

information in St. Charles Parish with resisting an officer with force or violence,

attempted first degree murder of a police officer and disarming a police officer by use of

force or threat of force.[3]  The Louisiana Fifth Circuit Court of Appeal summarized the

facts determined at trial in relevant part as follows:

> At trial, Deputy Thomas Plaisance of the St. Charles Parish Sheriff's Office ("SCPSO") testified that, on August 23, 2010, at about 10:40 p.m., he stopped a driver on River Road in New Sarpy for speeding.  After the driver pulled his truck into the parking lot of the Friendly Quick Stop at the corner of Clement and River Road, Officer Plaisance observed a large pit bull terrier, untethered, in the bed of the truck.  As Deputy Plaisance exited his police unit, the dog barked and lunged at him.  Deputy Plaisance instructed the driver to restrain the dog so the driver put the dog in the cab of the truck.  Unfortunately, Deputy Plaisance was unaware that the truck's passenger window was open.
>
> As Deputy Plaisance observed the driver, he suspected that the driver had been drinking alcohol.  When asked, the driver admitted that he had consumed two to three beers that night but refused to submit to a field sobriety test.
>
> When Deputy Plaisance instructed the driver to place his hands behind his back for arrest, he initially hesitated then turned as if to run away.  Deputy Plaisance drew and activated his Taser then again ordered the driver to place his hands behind his back and instructed him to lie on the ground.  Eventually, the driver, identified as Jerry Simmons, defendant-herein, complied.
>
> As defendant lay on the ground, Deputy Plaisance succeeded in getting the handcuff on defendant's right wrist but, as Deputy Plaisance attempted to handcuff defendant's left wrist, defendant rolled onto his back and struck Deputy Plaisance with his fist.  As defendant punched Deputy Plaisance, the pit bull jumped out of the truck and bit Deputy Plaisance on the head and on the side.  When defendant saw his dog biting Deputy Plaisance, defendant encouraged the dog, saying "Kill him! Get him! Bite him!"  Deputy Plaisance, who was kneeling, drew his gun and fired at the dog, which enraged defendant.
>
> At this point, Deputy Plaisance had his attention on the dog, which he felt was the greater threat.  When Deputy Plaisance attempted to holster his sidearm, he could not because he had forgotten to "decock it."  Defendant, who had moved behind Deputy Plaisance, immediately attempted to remove the weapon from the holster. Deputy Plaisance, who was still kneeling, realized that he would lose control of his sidearm and released the magazine from the weapon, which left only one

---

[3]St. Rec. Vol. 1 of 12, Bill of Information, 10/30/10 (as amended 2/22/11).

round of ammunition in the gun.  Defendant did gain control of Deputy Plaisance's sidearm but dropped it during the struggle.

As the two men struggled, defendant knocked Deputy Plaisance to the ground, straddled his torso, and struck him with his fists in the face and jaw. Defendant also repeatedly lifted Deputy Plaisance's head and slammed it into the ground, which caused lacerations on his scalp.  Additionally, defendant bit Deputy Plaisance's first finger, causing a deep laceration.

During this incident, James Wilcox, his wife, three children, and his friend, Travis Credeur, were standing outside their houses across the street from the Friendly Quick Stop.  James Wilcox testified that, when Deputy Plaisance and defendant began speaking loudly, the dog jumped out of the truck and attacked Deputy Plaisance.  Mr. Wilcox testified that, after defendant started beating Deputy Plaisance's head into the ground, he and his friend, Pete Massengale, approached to help the officer.  According to Mr. Massengale, he thought that if he failed to stop defendant, defendant was going to kill Deputy Plaisance.

Mr. Massengale, who grabbed a wooden boat paddle from another bystander, approached Deputy Plaisance and warned defendant to stop.  According to Deputy Plaisance, when Mr. Massengale asked, Deputy Plaisance told Mr. Massengale to hit defendant with the paddle.  Mr. Massengale struck defendant in the shoulders but defendant ignored Mr. Massengale and continued to hit Deputy Plaisance.  Mr. Massengale struck defendant again in the shoulders, to no avail.  Finally, Mr. Massengale struck defendant forcefully, with the flat of the paddle, in the back of the head.

Defendant finally stopped hitting Deputy Plaisance and rolled to his side. After defendant released him, Deputy Plaisance tased defendant, which subdued him. Lieutenant Mike Folse arrived almost immediately, and he and Deputy Plaisance together were finally able to handcuff defendant.  The dashboard camera Deputy Plaisance's vehicle recorded the incident.  The video of the incident was introduced into evidence and played for the jury.

During the altercation, Deputy Plaisance received a laceration to his forehead, which required stitches; the dog bites on his scalp, which required stitches; the human bite on the right index finger, which required stitches and caused the most time out of work; and bruising and swelling to his face and jaw.  For four days, he was unable to chew solid food.

Lieutenant George Breedy of the SCPSO testified that, on August 24, 2010, he was dispatched to the St. Charles Parish Hospital to investigate defendant for driving while intoxicated and obtained consent from defendant to draw blood.  The Louisiana State Police Crime Lab tests showed that defendant's blood alcohol level was 0.20 grams percent, which was almost three times the legal limit of .08.

<u>State v. Simmons</u>, 136 So.3d 358, 362-64 (La. App. 5th Cir. 2014); State Record Volume

5 of 12, Louisiana Fifth Circuit Opinion, 13-KA-258, pages 3-6, February 26, 2014.

Following an August 11, 2011, hearing, the state trial court granted Simmons's request to represent himself based on his desire to pursue a defense that his appointed counsel did not find viable.[4]  The court also appointed Simmons's previously appointed attorney to act as standby counsel through trial and a second attorney to act only as additional pretrial standby counsel.

Simmons was tried before a jury on September 7 and 8, 2011, and found guilty as charged on all counts.[5]  On September 21, 2011, the state trial court denied Simmons's pro se motion for a new trial alleging ineffective assistance of counsel.[6]  At an October 12, 2011 hearing, the state trial court denied Simmons's oral motion for post-verdict judgment of acquittal.[7]  That same day, Simmons was sentenced to serve concurrent prison sentences of three years for resisting an officer, 22 years for attempted first degree murder of an officer and five years for disarming an officer.

---

[4]St. Rec. Vol. 5 of 12, Hearing Transcript, pp. 10-11, 8/10/11; St. Rec. Vol. 1 of 12, Minute Entry, 8/10/11; Motion to Dismiss Appointed Counsel and Proceed Pro Se, 7/15/11; Trial Court Order, 8/26/11.

[5]St. Rec. Vol. 1 of 12, Trial Minutes, 9/7/11; Trial Minutes, 9/8/11; St. Rec. Vol. 2 of 12, Jury Verdict, 9/8/11; St. Rec. Vol. 3 of 12, Trial Transcript, 9/7/11; St. Rec. Vol. 4 of 12, Trial Transcript (continued), 9/7/11; Trial Transcript, 9/8/11.

[6]St. Rec. Vol. 2 of 12, Motion for New Trial, 9/8/11; Trial Court Order, 9/21/11.

[7]St. Rec. Vol. 1 of 12, Sentencing Minutes, 10/12/11; St. Rec. Vol. 4 of 12, Sentencing Transcript, 10/12/11.

On November 15, 2011, the state trial court denied Simmons's motion to reconsider the sentence.[8]  On March 28, 2012, the court denied Simmons's second motion for a new trial asserting ineffective assistance of counsel.[9]

After hearings on April 25 and May 23, 2012, the state trial court adjudicated Simmons a "multiple offender."[10]  The court sentenced Simmons on May 29, 2012, as a sixth felony offender to serve concurrent prison sentences of 25 years for resisting an officer, 75 years for attempted first degree murder of an officer and 25 years for disarming an officer, each without benefit of parole, probation or suspension of sentence.[11]

On direct appeal to the Louisiana Fifth Circuit, appointed counsel asserted a single claim that the state trial court erred in denying the motion to continue trial, which abridged Simmons's rights to present a defense, confrontation and a fair trial.[12]  In his pro se supplemental brief, Simmons asserted twelve errors:[13] (1) The state trial court erred

---

[8]St. Rec. Vol. 2 of 12, Trial Court Order (on motion to reconsider sentence), 11/15/11.

[9]St. Rec. Vol. 2 of 12, Trial Court Order (2), 3/28/12; Motion for New Trial, 2/7/12.

[10]St. Rec. Vol. 1 of 12, Multiple Bill Hearing Minutes, 4/25/12; Multiple Bill Hearing Minutes, 5/23/12; St. Rec. Vol. 4 of 12, Multiple Bill Hearing Transcript, 4/25/12; Multiple Bill Hearing Transcript, p. 60, 5/23/12.

[11]St. Rec. Vol. 1 of 12, Multiple Offender Sentencing Minutes, 5/29/12; St. Rec. Vol. 4 of 12, Multiple Offender Sentencing Transcript, 5/29/12.

[12]St. Rec. Vol. 7 of 12, Appeal Brief, 2013-KA-0258, 10/29/13.

[13]St. Rec. Vol. 7 of 12, Pro Se Supplemental Brief, 2013-KA-0258, 12/13/13.

by denying his request for compulsory process. (2) The state trial court erred in its jury instruction regarding reasonable doubt. (3) The state trial court prevented him from providing the jury with all relevant facts to render a proper verdict. (4) The state trial court did not allow him to conduct a meaningful investigation after his request to represent himself was granted. (5) The state trial court erred in denying his motion to change his plea to not guilty by reason of insanity. (6) The state trial court did not allow him "full confrontation" of the State's witnesses. (7) His defense was prejudiced because his legs were shackled during trial. (8) A "prosecutor's remark" affected the jury's decision. (9) He was denied effective assistance of counsel before trial. (10) The state trial court erred in failing to appoint different counsel, which forced him to move to represent himself. (11) The state trial court abused its discretion in denying his pre-trial motion to recuse himself when the court denied him compulsory process, the right of confrontation, meaningful cross-examination and a fair trial. (12) He challenges the not guilty plea entered on advice of counsel.

The Louisiana Fifth Circuit affirmed the conviction and sentence on February 26, 2014.[14] The court found no merit in the claim filed by counsel or in pro se claims one, three, four, six, eight and ten. The court held that Simmons failed to preserve for appeal pro se claims two, five, seven and eleven, and alternatively, that each of those claims

---

[14]Simmons, 136 So.3d at 358; St. Rec. Vol. 5 of 12, 5th Cir. Opinion, 13-KA-258, 2/26/14.

were meritless.  The court also held that Simmons failed to brief and therefore abandoned the twelfth pro se claim.  The court declined to consider claim nine asserting ineffective assistance of counsel, deferring it to post-conviction review.

The Louisiana Supreme Court denied Simmons's related writ application on October 31, 2014, without stated reasons.[15]  His conviction became final ninety (90) days later on January 29, 2015, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On July 10, 2015, Simmons signed and submitted to the state trial court an application for post-conviction relief and accompanying memorandum in which he asserted the following grounds for relief:[16]  (1) He received ineffective assistance of counsel when his appointed counsel (a) failed to conduct a prompt and independent investigation into the background of the officers to be called at trial and retrieve the records of Simmons's past traffic citations; (b) failed to subpoena and preserve meaningful evidence, including obtaining statements from hospital staff and hospital

---

[15]State v. Simmons, 152 So.3d 151 (La. 2014); St. Rec. Vol. 8 of 12, La. S. Ct. Order, 2014-KO-0674, 10/31/14; La. S. Ct. Writ Application, 14-KO-674, 4/1/14 (dated 3/24/14); St. Rec. Vol. 5 of 12, La. S. Ct. Letter, 2014-KO-674, 4/1/14.

[16]St. Rec. Vol. 6 of 12, Application for Post-Conviction Relief, 7/17/15 (dated 7/10/15).

security; investigate his prior traffic citations and the background of the officers; pursue a psychiatric evaluation; obtain the hospital security video; and verify his claims of racial discrimination; (c) failed to question the deputy at the preliminary hearing as to whether he assaulted Simmons at the hospital and failed to subpoena hospital staff to discredit the officer; (d) failed to develop and pursue a not guilty plea and not guilty by reason of insanity to challenge his mental state during the offense; (e) gave unreasonable advice for Simmons to maintain his not guilty plea and not enter the insanity plea; (f) had an irreconcilable conflict with Simmons and caused a complete breakdown in communication, which affected Simmons's ability to raise the insanity defense; (g) misled and manipulated the court proceedings with his arguments at the preliminary hearing; and (h) failed to request to be removed from the case in light of his foregoing failures and conflicts with Simmons. (2) The state trial court erred when it failed to appoint a different, conflict-free attorney to assist him and erred further when the court (a) vouched for counsel's capabilities and (b) failed to address counsel's conflicts with Simmons. (3) The state trial court erred by denying Simmons the fundamental right to represent himself when the court failed to recognize the presumption against waiver of counsel. (4) The state trial court failed to inform Simmons of his fundamental rights during waiver of counsel. (5) The state trial court denied him the right to compulsory process. (6) The state trial court denied him the right to testify on his own behalf. (7) He was denied due process when the prosecutor relied on perjured testimony and he was

8

required to wear shackles during trial and had police present in the courtroom. (8) The state trial court erred when it violated Simmons's confrontation rights during cross-examination. (9) He was adjudicated by a biased judge who denied the motion for his own recusal after denying Simmons the opportunity to change his guilty plea. (10) The state trial court erred in denying Simmons's request to change his plea and for a continuance, ruled on his mental state during the offense and denied Simmons the right to present a defense. (11) The state trial court violated Simmons's right to a jury trial on his mental state. (12) The trial court erred in instructing the jury.

On August 5, 2015, the state trial court ordered the State to respond to Simmons's claims one, six and nine.  The court declined to consider Simmons's claims two, three, four, five, seven, eight and ten, finding that these claims had been fully resolved on direct appeal, citing La. Code Crim. P. art. 930.4.[17]  The court also declined to consider Simmons's claims eleven and twelve for his failure to provide grounds to support the claims, citing La. Code Crim. P. art. 926 and 930.3.

After additional briefing, the state trial court held an evidentiary hearing on November 3, 2015.[18]  At the conclusion of the hearing, the court entered oral reasons barring relief on claim number nine (judicial bias) and reiterating the bar to claim number

---

[17]St. Rec. Vol. 6 of 12, Trial Court Order, 8/5/15.

[18]St. Rec. Vol. 6 of 12, State's Response, 8/18/15; Trial Court Order, 8/28/15; Traverse in Support, 9/1/15.

four (waiver of right to counsel), finding that these issues had been resolved on direct appeal, citing La. Code Crim. P. art. 930.4.[19]  As for Simmons's remaining ineffective assistance of counsel claim (number one), the court denied relief under <u>Strickland v. Washington</u>, 466 U.S. 688 (1984).[20]

On December 4, 2015, Simmons sought review of that ruling in the Louisiana Fifth Circuit.  Per order of the appellate court, on December 23, 2015, the state trial court issued a per curiam order restating its prior written and oral reasons for denial of Simmons's post-conviction application.[21]  On April 26, 2016, the Louisiana Fifth Circuit denied Simmons's writ application, finding no error in the denial of relief on each claim for the reasons cited by the state trial court.[22]  On September 22, 2017, the Louisiana Supreme Court denied Simmons's related writ application finding no error in the state trial court's ruling.[23]

---

[19]St. Rec. Vol. 6 of 12, Hearing Transcript, pp. 105-06, 11/3/15.

[20]<u>Id.</u>, pp. 106-08.

[21]St. Rec. Vol. 6 of 12, Trial Court Order, 12/23/15; 5th Cir. Order, 15-KH-763, 12/7/15.

[22]St. Rec. Vol. 11 of 12, 5th Cir. Order, 15-KH-763, 4/26/16; 5th Cir. Writ Application, 15-KH-763, 12/14/15.

[23]<u>State ex rel. Simmons v. State</u>, 226 So.3d 442 (La. 2017); St. Rec. Vol. 8 of 12, La. S. Ct. Order, 2016-KH-1055, 9/22/17; St. Rec. Vol. 9 of 12, La. S. Ct. Writ Application, 16-KH-1055, 6/3/16 (postmarked 5/12/16).

II.    <u>FEDERAL HABEAS PETITION</u>

On December 5, 2017, after correction of certain deficiencies, the clerk of this court filed Simmons's petition for federal habeas corpus relief in which he asserted the following two grounds for relief:[24] (1) He received ineffective assistance of counsel in that (a) his counsel had an inherently prejudicial conflict through a relationship with a key state witness and failed to call hospital staff and the officer to testify about his post-arrest assault by the same officer; (b) he had a conflict with his counsel over assertion of an insanity defense and counsel failed to request psychiatric evaluation; (c) his counsel failed to investigate his prior traffic citations history; and (d) he was constructively denied counsel when the court would not replace his ineffective appointed attorney, which forced him to move to represent himself. (2) He was adjudicated by a biased judge who (a) constructively denied him effective assistance of counsel; (b) denied him compulsory process; (c) denied him the rights of confrontation and cross-examination; (d) denied him the right to present a defense; (e) denied him the right to self-representation; and (f) denied him the right to a fair trial.

The State filed an answer and memorandum in opposition to Simmons's petition asserting that Simmons is not entitled to federal habeas relief because he failed to prove ineffective assistance of counsel under <u>Strickland</u> and his claim of a biased tribunal was

---

[24]Rec. Doc. No. 4.

in procedural default.[25]  Simmons filed a reply to the State's answer and memorandum

urging that his claims be reviewed by this court on the merits despite any procedural

grounds relied on by the state courts.[26]

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.

No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[27] and

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198

(5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

applies to Simmons's petition, which, for reasons discussed below, is deemed filed in a

federal court on November 6, 2017.[28]  The threshold questions in habeas review under

---

[25]Rec. Doc. No. 13.

[26]Rec. Doc. No. 15.

[27]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk filed Simmons's deficient petition on November 6, 2017, when it was received, and the case was later opened on December 11, 2017 when pauper status was granted.  The official stamp of the prison legal programs department reflects that Simmons presented the original deficient petition and pauper application to prison officials on November 6, 2017, for electronic mailing to federal court.

the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Simmons's federal petition was timely filed and that he exhausted state court review of his claims. However, as asserted by the State, Simmons's claim of a biased state trial judge is in procedural default and should be dismissed for the following reasons.

## IV.   PROCEDURAL DEFAULT (CLAIM NO. 2)

In his federal habeas petition, Simmons asserts that the state trial judge erred when he ruled on the motion seeking his own recusal since his bias was demonstrated by constructive denial of effective assistance of counsel, his confrontation rights, meaningful cross-examination, right to present a defense, right to self-representation and right to a fair trial. Simmons moved pretrial to recuse the trial judge on grounds that the judge failed to replace his appointed counsel, knowing that the attorney would not pursue an insanity defense.[29] At a September 6, 2011, hearing, the state trial court denied the motion finding it a baseless delay tactic.[30]

---

[29]St. Rec. Vol. 2 of 12, Motion to Recuse, 8/30/11.

[30]St. Rec. Vol. 5 of 12, Hearing Transcript, p. 4, 9/6/11.

13

On direct appeal, Simmons asserted that the state trial court abused its discretion in denying the pre-trial motion to recuse when the court had denied him compulsory process, the right of confrontation, meaningful cross-examination and a fair trial. The Louisiana Fifth Circuit declined to consider the claim, finding that it raised different grounds for recusal than those asserted in the original motion in the state trial court. The court cited Louisiana case law that "limited [an] appeal to those grounds articulated at trial, and a new basis for objection may not be raised for the first time on appeal. This issue is not properly before this Court on appeal." State v. Simmons, 136 So.3d at 372 (citing State v. Jackson, 450 So.2d 621 (La. 1984); State v. Alvarez, 71 So.3d 1079, 1085 (La. App. 5th Cir. 2011)); Sate Record Volume 5 of 12, Louisiana Fifth Circuit Opinion, 13-KA-258, page 21, February 26, 2014. The Louisiana Supreme Court denied the related writ application without stated reasons.

Simmons later asserted in his state court application for post-conviction relief that he was adjudicated by a biased judge when the state trial judge ruled to deny the motion for his own recusal. Following a post-conviction evidentiary hearing, the state trial court found that denial of the motion to recuse was "grossly insufficient" to prove bias and the claim was barred from post-conviction review under La. Code Civ. P. art. 930.4,[31]

---

[31]La. Code Crim. P. art. 930.4(A) precludes post-conviction review of claims already "fully litigated" on direct appeal. Bennett v. Whitley, 41 F.3d 1581, 1583 (5th Cir. 1994). This rule presumes that the claims have been fully reviewed by the state appellate court on direct appeal and by the Louisiana Supreme Court and therefore need not be considered again on post-conviction application. Id. However, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor

because it was fully litigated on appeal.  The Louisiana Fifth Circuit agreed with the state trial court's ruling, citing its direct appeal opinion and the contemporaneous objection rule under La. Code Crim. P. art. 841.  The Louisiana Supreme Court also denied Simmons's related writ application finding no error.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 & n.10 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  The procedural bar also prevails over any alternative discussion of the merits of the claim by a state court.

---

is it a decision on the merits." Id.  The bar does not preclude federal habeas review of claims that were considered on direct appeal.  This court simply "look[s]-through" the ruling on collateral review and considers only the direct appeal proceeding.  Id. at 1582-83.  Thus, this court will consider the grounds for denial of relief presented by the appellate court on direct appeal review.

See Robinson v. Louisiana, 606 F. App'x 199, 203-04 (5th Cir. 2015) (citing Woodfox v. Cain, 609 F.3d 774, 796 (5th Cir. 2010)).  In this case, the procedural rule cited by the Louisiana Fifth Circuit on direct appeal bars review of Simmons's federal habeas claims.

A.    INDEPENDENT AND ADEQUATE

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Amos, 61 F.3d at 338.  The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  Walker v. Martin, 562 U.S. 307, 316-17 (2011); Glover, 128 F.3d at 902.  A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." (citation omitted) Beard v. Kindler, 558 U.S. 53, 60-61 (2009).  The question of the adequacy of a state procedural bar is itself a federal question.  Beard, 558 U.S. at 60 (citing Lee v. Kemna, 534 U.S. 362, 375 (2002)).

The last reasoned decision on Simmons's judicial bias claim was the Louisiana Fifth Circuit Court of Appeal decision relying on Louisiana procedural rules governing preservation of claims for direct appeal.  See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (When the last reasoned state court opinion explicitly imposes a procedural bar to a claim, a federal habeas court will presume that later unexplained orders rest upon the same ground).  The court cited Louisiana law restricting appellate review to those objections and grounds presented to the state trial court.  See State v. Jackson, 450 So.2d at 621; State v. Alvarez, 71 So.3d at 1085; see also, La. Code Crim. P. art. 841.  It is well settled that this type of "contemporaneous objection" rule is an "independent and adequate" state procedural ground which bars federal habeas corpus review.  Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977).  The reasons for the state courts' dismissal of Simmons's claim, therefore, were independent of federal law and relied strictly on state procedural requirements.  See Harris, 489 U.S. at 263.

It is well settled and regularly enforced in Louisiana law that criminal defendant is limited on appeal to those grounds for an objection that were articulated at trial.  See e.g., State v. Taylor, 887 So.2d 589 (La. App. 5th Cir. 2004); State v. Torregano, 875 So.2d 842 (La. App. 5th Cir. 2004); State v. West, 419 So.2d 868 (La. 1982); State v. Provo, 396 So.2d 1298 (La. 1981); State v. Johnson, 389 So.2d 372 (La. 1980).  Therefore, the failure to preserve a claim contrary to Louisiana law, including La. Code Crim. P. art. 841, provides adequate state grounds to bar review by the federal courts in

17

a habeas corpus proceeding.  See Proctor v. Butler, 831 F.2d 1251, 1253 (5th Cir. 1987).

The same is true in this case.

The state courts' ruling was based on Louisiana law setting forth the procedural

requirements for the preservation and presentation of claims on direct appeal.  See Fisher,

169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of

the issue).  The state court's reasons for denial of relief on Simmons's claim were

therefore independent of federal law and adequate to bar review of his claims in this

federal habeas court.

B.    CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only

if he can show "cause" for his default and "prejudice" attributed it to, or demonstrate that

the federal court's failure to review the defaulted claim will result in a "fundamental

miscarriage of justice."  Fisher, 169 F.3d at 301 (citing Magouirk v. Phillips, 144 F.3d

348, 359 (5th Cir. 1998); Coleman, 501 U.S. at 748-50); Amos, 61 F.3d at 338-39 (citing

Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that

some objective factor external to the defense impeded his efforts to comply with the

state's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  The mere fact that

petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed

18

to raise the claim despite recognizing it, does not constitute cause for a procedural default.  Id. at 486.

Simmons has not offered any cause for his default that would excuse the procedural bar imposed by the Louisiana courts.  The record does not support a finding that any factor external to the defense prevented petitioner from asserting these claims in a procedurally proper manner.  The record reflects no action or inaction by the State which prevented him from properly asserting these claims in the state courts.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  Ratcliff v. Estelle, 597 F.2d 474, 477 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

C.    FUNDAMENTAL MISCARRIAGE OF JUSTICE

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual

innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); see Nobles, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.  Simmons presents no argument and the record contains nothing suggesting his actual innocence on the underlying conviction.

For these reasons, Simmons has failed to overcome the procedural bar to review of his claim in this federal court.  His biased judge claim must be dismissed with prejudice as procedurally defaulted.

## V.    STANDARDS OF A MERITS REVIEW OF THE REMAINING CLAIM

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" (brackets in original) Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Penry, 532 U.S. 782, 792-93 (2001) (citing Williams, 529 U.S. at 405-06, 407-08); Hill, 210 F.3d at 485. The "critical point"

in determining the Supreme Court rule to be applied "is that relief is available under §
2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly
established rule applies to a given set of facts that there could be no 'fairminded
disagreement' on the question." (citation omitted)  White v. Woodall, 134 S. Ct. 1697,
1706-07 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011) and Knowles v.
Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale
before it can apply to the facts at hand,' then by definition the rationale was not 'clearly
established at the time of the state-court decision.'"  White, 134 S. Ct. at 1706 (quoting
Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'[A] federal habeas court may not issue the writ simply because that court
concludes in its independent judgment that the state-court decision applied [a Supreme
Court case] incorrectly.'" (citation omitted, brackets in original) Price v. Vincent, 538
U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) and Bell
v. Cone, 535 U.S. 685, 699 (2002)).  Rather, under the "unreasonable application"
standard, "the only question for a federal habeas court is whether the state court's
determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir.
2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the
petitioner to show that the state court applied the precedent to the facts of his case in an
objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S.
at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

22

VI.    <u>EFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 1)</u>

Simmons asserts four grounds on which he claims his appointed counsel provided ineffective assistance before he was allowed to represent himself.  He claims that his counsel had a relationship with the victim, which is the reason counsel failed to call hospital staff and the deputy to testify about an alleged post-arrest assault at the hospital. He also claims that he had an insurmountable conflict with counsel over the assertion of an insanity defense and he was prejudiced by counsel's failure to request a psychiatric evaluation.  He also asserts that counsel failed to investigate his prior traffic citations history to establish that he was harassed by deputies before the subject incident.  He also argues that he was constructively denied counsel when the state trial court would not replace his appointed attorney, which compelled him to represent himself.

Simmons asserted these claims on post-conviction review in the state courts.  The state trial court issued the last reasoned opinion on this claim, finding that Simmons failed to establish a basis for relief under <u>Strickland</u>.  <u>See</u> <u>Wilson v. Sellers</u>, __ U.S. __, 2018 WL 1800370, at *3 (Apr. 17, 2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning.")

The standard for judging performance of counsel was established in <u>Strickland</u>, in which the Supreme Court established a two-part test for evaluating claims of

ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 687. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 892-93. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105 (quoting Strickland,

466 U.S. at 690). The <u>Harrington</u> Court went on to recognize the high level of deference

owed to a state court's findings under <u>Strickland</u> in light of the AEDPA:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly
> deferential," and when the two apply in tandem, review is "doubly" so.
> The <u>Strickland</u> standard is a general one, so the range of reasonable
> applications is substantial. Federal habeas courts must guard against the
> danger of equating unreasonableness under <u>Strickland</u> with
> unreasonableness under § 2254(d). When § 2254(d) applies, the question
> is not whether counsel's actions were reasonable. The question is whether
> there is any reasonable argument that counsel satisfied <u>Strickland</u>'s
> deferential standard.

(citations omitted) <u>Harrington</u>, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential."

<u>Cullen v. Pinholster</u>, 563 U.S. 170, 190 (2011) (quoting <u>Knowles</u>, 556 U.S. at 123). This

court must therefore apply the "strong presumption" that counsel's strategy and defense

tactics fall "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466

U.S. at 689.

Federal habeas courts presume that litigation strategy is objectively reasonable

unless clearly proven otherwise by the petitioner. <u>Id.</u>, 466 U.S. at 689; <u>Geiger v. Cain</u>,

540 F.3d 303, 309 (5th Cir. 2008); <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999).

In assessing counsel's performance, a federal habeas court must make every effort to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time

of trial. <u>Strickland</u>, 466 U.S. at 689; <u>Neal</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227

F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001).  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  <u>Lamb v. Johnson</u>, 179 F.3d 352, 358 (5th Cir. 1999), <u>cert. denied</u>, 528 U.S. 1013 (1999) (citing <u>Rector v. Johnson</u>, 120 F.3d 551, 564 (5th Cir. 1997) and <u>Mann v. Scott</u>, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The issue of ineffective assistance of counsel is a mixed question of law and fact. <u>Clark v. Thaler</u>, 673 F.3d 410, 416 (5th Cir. 2012); <u>Woodfox</u>, 609 F.3d at 789.  Thus, under the AEDPA, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

A.    <u>FAILURE TO CALL WITNESSES AND OBTAIN TRAFFIC CITATIONS</u>

Simmons alleges that his counsel knew the victim before the incident and did not investigate and call witnesses to testify about the alleged physical assault by the deputies that took place at the hospital after his arrest.  He also claims that counsel failed to obtain copies of his prior traffic citations to support the assertion that he was being harassed and racially targeted.  Following an evidentiary hearing, the state trial court held that Simmons's counsel in fact investigated the alleged assault and found that there were no witnesses who could corroborate Simmons's allegations.  Similarly, counsel attempted to obtain traffic citations, but none could be located to support Simmons suggestion that he was cited weekly by the deputies.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." (quotation omitted, emphasis added) Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011) ; accord Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998). A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown. Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (some evidence is required to show that "the decision reached would reasonably likely have been different.") (quoting Strickland, 466 U.S. at 696) . To prevail on such a claim, petitioner must provide factual support showing what exculpatory evidence further investigation would have revealed. See Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Moawad, 143 F.3d at 948; Davis v. Cain, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).

In addition, it is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)); accord Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008). To prevail on such a claim, petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony and show that the testimony would have been favorable to

a particular defense.  Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citing Bray, 265 F. App'x at 298).  The Fifth Circuit has "clarified that the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'"  Hooks v. Thaler, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting Woodfox, 609 F.3d at 808).

Simmons and his former appointed counsel were the only two witnesses to testify at the post-conviction hearing before the state trial court.  As found by the state courts, the testimony and argument at the hearing established that Simmons's former counsel had his investigator interview hospital personnel who were present at the time Simmons was at the hospital.[32]  The investigation failed to locate anyone or anything to corroborate Simmons's claim that he was assaulted by deputies at the hospital.[33]  His former counsel also testified that he told Simmons that even if the assault occurred after his arrest, it was not relevant to the defense against the criminal charges.  The same is true of counsel's efforts to locate traffic citations to suggest harassment by the deputies.[34]  No weekly citations could be located and, even if they existed, they would not have been relevant to the subject incident captured on the deputy's video camera.

---

[32]St. Rec. Vol. 6 of 12, Hearing Transcript, pp. 50-51, 53, 54, 97-98, 11/3/15.

[33]Id.

[34]Id., at 55.

The record supports the state courts' findings that Simmons's former counsel investigated the alleged assault and harassment and was unable to locate witnesses to corroborate Simmons's claims. The record also is clear that the alleged assault occurred sometime after Simmons was arrested and neither the assault nor any prior traffic tickets were relevant to the incident leading to his arrest. To date, Simmons has presented no witness, evidence or affidavit to the state courts or this court to demonstrate that he was harassed by deputies, beaten by deputies at the hospital or how such an incidents were in any way relevant to his defense to the charges for which he was arrested. Simmons's claims are unfounded and unsupported, and he has failed to meet his burden of proof with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011) (Petitioner's "speculations" about what uncalled witnesses would have testified about "are unsupported by anything other than petitioner's self-serving testimony at trial. The only evidence of a missing witness's testimony is from petitioner."); Anthony v. Cain, No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 08-CV-0032 and 03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless

29

the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); <u>Harris v. Director, TDCJ-CID</u>, No. 06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.")

As determined by the state courts, Simmons has failed to establish any deficiency or prejudice arising from his counsel's investigation into and tactical decision not to further pursue testimony or evidence related to the prior traffic citations or the alleged physical assault at the hospital. The denial of relief on this issue was not contrary to or an unreasonable application of <u>Strickland</u>.

## C.    <u>CONFLICT OVER THE INSANITY DEFENSE</u>

Simmons argues that his counsel was ineffective in failing to request a psychiatric examination for Simmons and pursue an insanity defense pursuant to Simmons's instructions. Simmons claims that his counsel failed to gather evidence of his prior harassment which caused him to "snap" when he was stopped by the deputy. He claims that this failure prejudiced the defense and his ability to assert that he was temporarily insane at the time of the incident.

In Louisiana, a legal presumption exists that a defendant is sane at the time of the offense. La. Rev. Stat. § 15:432. To rebut the presumption of sanity and avoid criminal

responsibility, a defendant has the burden of proving the affirmative defense of insanity

by a preponderance of the evidence.  La. Code Crim. P. art. 652.  The defense of insanity

is defined by La. Rev. Stat. § 14:14:

> If the circumstances indicate that because of a mental disease or mental
> defect the offender was incapable of distinguishing between right and
> wrong with reference to the conduct in question, the offender shall be
> exempt from criminal responsibility.

Under Louisiana law, "[c]riminal responsibility is not negated merely by the

existence of a mental disease or defect ... ." State v. Williams, 346 So.2d 181, 186 (La.

1977).  A mental disease or disorder short of legal insanity is insufficient to support an

insanity defense.  Id.; State v. Koon, 704 So.2d 756, 768 (La. 1997); State v. Weber, 364

So.2d 952, 956 (La. 1978).  Thus, evidence of anger and emotional provocation are not

admissible to establish insanity in Louisiana.  See State v. Pitre, 901 So.2d 428, 444 (La.

App. 1st Cir. 2004) ("Moreover, evidence of a mental disease or defect affecting

defendant at the time of an offense is inadmissible, whether it is an organically caused

mental condition or a psychologically or emotionally induced mental condition.")

Furthermore, evidence of intoxication is not relevant to or the same as insanity under

Louisiana law.  See State v. Foster, 647 So.2d 1224, 1230 (La. App. 2d Cir. 1994) (citing

State v. Shields, 444 So.2d 287, 293 (La. App. 1st Cir. 1983)).

Applying these standards, I find that Simmons has not established any basis for

his counsel to have pursued a psychiatric evaluation or assert an insanity defense.

Simmons has consistently argued that he wanted to assert that he "snapped" during the incident with the victim-deputy, because he previously was harassed by the issuance of traffic citations against him.  He also wanted to present to the jury that the citations were racially motivated.[35]  He sought to tie this harassment and racism to presentation of evidence that he was beaten in the hospital.  He argues that his counsel prejudiced his ability to present this conglomeration because he did not request a psychiatric evaluation and refused to pursue an insanity plea.

Simmons's former counsel testified at the post-conviction hearing that he saw no basis to pursue an insanity defense and thoroughly discussed his decision not to do so with Simmons.[36]  He testified that he watched the video from the deputy's dashboard camera several times and concluded that there was no harsh treatment by the deputy or action by Simmons to convince a jury that Simmons had snapped or was unaware of the nature of his actions.  He also found no indication of insanity from his interactions with Simmons.

These are the same conclusions reached by the state trial court when it denied Simmons's untimely request to change his not guilty plea to an insanity plea.  In denying him relief on his challenge to the denial of his request to change his plea and his

---

[35]Despite investigation, Simmons's counsel could find no support for this assertion during his pretrial investigation.  St. Rec. Vol. 6 of 12, Hearing Transcript, p. 72, 11/3/15.

[36]Id., at pp. 55, 56-57, 76, 78, 81.

ineffective assistance of counsel claims, the state courts found that his actions and words were not those of a person who was incapable of appreciating the nature and wrongfulness of his conduct.

Simmons claims that he was angry and emotionally bothered by the perceived harassment by deputies, but neither is sufficient to support an insanity defense under Louisiana law. Simmons has not established a reasonable basis on which his trial counsel might have pursued an insanity defense.

His former counsel's decision not pursue a baseless insanity defense, or request a psychiatric evaluation, was more than reasonable under the circumstances of the case. "[T]he Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." United States v. Cronic, 466 U.S. 648, 656 n.19 (1984). Furthermore, "[i]f the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, then the defendant's ineffective assistance claim must fail." Jones, 163 F.3d at 304 (quoting Green v. Lynaugh, 868 F.2d 176, 177 (5th Cir. 1989)). This is true in Simmons's case.

Simmons has failed to establish deficient performance or prejudice resulting from counsel's decision not to proceed with or pursue an insanity defense. Thus, the denial

33

of relief by the state courts was not contrary to or an unreasonable application of Strickland and its progeny. He is not entitled to relief on this claim.

D.    CONSTRUCTIVE DENIAL OF COUNSEL

Simmons asserts that he was constructively denied effective assistance of counsel because of counsel's conflicts with him, which caused Simmons to request that he be allowed to represent himself. The alleged specific conflicts are that counsel failed to pursue the insanity defense and pursue and present evidence of the alleged harassment, racial targeting and post-arrest assault.

In Cronic, the Supreme Court held that a defendant may be constructively denied counsel, even though an attorney had been appointed to represent him. Id., 466 U.S. at 648. The Cronic Court recognized that the performance of counsel may be so inadequate as to constitute no assistance of counsel at all, despite the physical presence of an attorney at the proceeding. Cronic, 466 U.S. at 654 n.11. The Cronic presumption of prejudice arises in circumstances where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing;" or (3) counsel "is called upon to render assistance where competent counsel very likely could not." Cronic, 466 U.S. at 658-59 (citations omitted). Only in these "circumstances of magnitude" may "the likelihood that the verdict is unreliable [be] so high" that a constitutional violation may be found. Mickens v. Taylor, 535 U.S. 162, 166 (2002) (emphasis added).

34

The Supreme Court has emphasized that, for <u>Cronic</u> to apply, "the attorney's failure must be complete." <u>Bell</u>, 535U.S. at 697. "For purposes of distinguishing between the rule of <u>Strickland</u> and that of <u>Cronic</u>," the Supreme Court held that a case does not come under <u>Cronic</u> merely because counsel failed to "oppose the prosecution . . . at specific points" in the proceeding. <u>Bell</u>, 535 U.S. at 697. The distinction between counsel's failure to oppose the prosecution entirely and counsel's failure to do so at certain points is a "difference . . . not of degree but of kind." <u>Bell</u>, 535 U.S. at 697. The <u>Cronic</u> standard applies only when counsel has <u>entirely</u> failed to challenge the prosecution's case. <u>Id</u>. at 697; <u>Riddle v. Cockrell</u>, 288 F.3d 713, 718 (5th Cir. 2002) ("constructive denial of counsel" sufficient to support a presumption of prejudice arises only when counsel was absent from the courtroom, there was an actual conflict of interest, or there was official interference with the defense); <u>Mayo v. Cockrell</u>, 287 F.3d 336, 340 n.3 (5th Cir. 2002); <u>Burdine v. Johnson</u>, 262 F.3d 336, 344 n.4 (5th Cir. 2001). The petitioner has the burden to show that he was constructively denied counsel. <u>Childress v. Johnson</u>, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997). "It is not enough for the defendant to show mere 'shoddy representation' or to prove the existence of 'errors, omissions, or strategic blunders' by counsel. Bad lawyering, regardless of how bad, does not support the [per se] presumption of prejudice." <u>Johnson v. Cockrell</u>, 301 F.3d 234, 238-39 (5th Cir. 2002) (citing <u>Jackson v. Johnson</u>, 150 F.3d 520, 525 (5th Cir. 1998)) (quoting <u>Childress</u>, 103 F.3d at 1228-29).

35

The issue of the constructive denial of counsel under <u>Cronic</u> is a mixed question of law and fact. <u>French v. Jones</u>, 225 F.3d 658, 2000 WL 1033021, at *3 (6th Cir. Jul. 18, 2000) (Table, Text in Westlaw). The question before this court is whether the state courts' denial of relief on this issue was contrary to or an unreasonable application of United States Supreme Court precedent.

The state courts' denial of relief on this issue was not specifically based on <u>Cronic</u>. The court instead addressed Simmons's entire ineffective assistance of counsel claim under <u>Strickland</u> based on the actual performance of counsel. Nevertheless, Simmons has not shown error in the application of that standard or that his claim should have been evaluated or would have been evaluated differently under the <u>Cronic</u> presumption of prejudice. The record does not demonstrate a complete failure by his counsel entirely to oppose the prosecution's case.

On the contrary, the state court record reflects that Simmons's appointed counsel actively prepared to challenge the State's evidence before Simmons took over representation. The transcripts of the state court pretrial proceedings demonstrate that counsel was fully familiar with the case and more than adequately represented Simmons in all pretrial proceedings. There is nothing in this record to suggest that Simmons's former counsel was "inert" in his representation. <u>Jackson</u>, 150 F.3d at 525. Simmons's perceived conflicts with counsel and his assertions under <u>Cronic</u> are based on the same reasonable tactical decisions made by counsel that were addressed under <u>Strickland</u> by

36

this court and by the state courts. Counsel's decision not to pursue baseless and irrelevant defenses does not equate to a failure of representation under Cronic. See United States v. Griffin, 324 F.3d 330, 364 (5th Cir. 2003) (no "constructive" denial of effective assistance of counsel or presumption of prejudice where there was no complete absence of counsel, no actual conflict, no state interference, and defense attorney actively participated in the criminal proceedings); see Cronic, 466 U.S. at 657 n.21 ("If counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance.").

To the extent Simmons may assert that he received ineffective assistance from his counsel after he was allowed to represent himself, he also has failed to establish his entitlement to relief under Strickland and Cronic. The federal courts have long recognized that once a defendant voluntarily waives his right to counsel and represents himself, he is prevented from asserting a claim of ineffective assistance of counsel. Faretta v. California, 422 U.S. 806, 834 n.46 (1975). The Faretta Court made clear that, "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" (emphasis added) Id. The Supreme Court has "emphasized that although the defendant 'may conduct his own defense ultimately to his own detriment, his choice must be honored.'" Godinez v. Moran, 509 U.S. 389, 400 (1993) (quoting Faretta, 422 U.S. at 834).

Thus, when Simmons's former counsel was made stand-by counsel, counsel had no duty to act as <u>co</u>-counsel for Simmons. <u>United States v. Daniels</u>, 572 F.2d 535, 540 (5th Cir. 1978) (noting that although a defendant has a constitutional right to represent himself, there is no right to hybrid representation, partly by counsel and partly by himself). Because his former attorney was appointed as stand-by counsel only, Simmons is not entitled to relief for any alleged ineffectiveness of stand-by counsel. <u>See</u> <u>United States v. Morrison</u>, 153 F.3d 34, 55 (2d Cir. 1998) (citing <u>United States v. Schmidt</u>, 105 F.3d 82, 90 (2d Cir. 1997)); <u>see</u> <u>United States v. Mikolajczyk</u>, 137 F.3d 237, 246 (5th Cir. 1998) (opining that, if defendant "had no right to standby counsel, it seems unlikely that standby counsel's failure to assist could be a violation of his Sixth Amendment rights.") The record is clear that Simmons's former counsel was diligent in his role as stand-by counsel and remained vigilant in his efforts to assure Simmons stayed on track during the subsequent pretrial hearings and at trial.

Simmons has not established that he was constructively denied counsel under the <u>Cronic</u> standard. He also has failed to demonstrate any basis for his ineffective assistance of counsel claims under <u>Strickland</u>. The state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court law. Simmons is not entitled to relief on this issue.

38

**RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Simmons's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[37]

New Orleans, Louisiana, this _____24th_____ day of April, 2018.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[37]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.